**The McHattie Law Firm**
**John B. Baldini, Esq.**
**550 West Main Street**
**Boonton, New Jersey 07005**
**jbaldini@mchattielaw.com**
**(v) 973.402.5505**
**(f) 973.400.4110**
**Attorneys for Plaintiff**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Ms. W. V., current employee of Kean University and known to all Defendant(s),<br><br>   *Plaintiff*<br><br>   v.<br><br>Kean University; Mr. Dawood Farahi, President; Mr. Faruque Chowdhury, Director of Human Resources; and John and Jane Does,<br><br>   *Defendant(s)* | Civil Act. No. _____<br><br><br>**COMPLAINT** |

Plaintiff, Ms. W. V. ("Plaintiff" and/or "Ms. W. V."), by and through her undersigned attorneys, averring upon knowledge as to herself and her own acts, and upon information and belief as to all other matters, brings this Complaint for relief against Kean University; Mr. Dawood Farahi, President, in his capacity as President and individually; Mr. Faruque Chowdhury, Director of Human Resources, in his capacity as Director of Human Resources and individually; and other agents of or those acting in active concert with Kean University and the other defendants ("Defendant(s)" and/or "Kean") from their willful and discriminatory acts and omissions, alleges as follows:

**INTRODUCTION**

1.  Ms. W. V. is an employee of Defendant Kean University and brings this Complaint

    against Defendant(s) for discrimination on the basis of disability.

2.  Ms. W. V. relies on her psychiatric service dog ("PSD"), Prince   ("Prince"), to mitigate

    symptoms of her mental disabilities.  This is Prince:

    , a 10 pound, pure bred, fully trained, hypo-allergenic

    Havanese.

3.  Prince is individually trained to perform certain specific work on behalf of Ms. W. V.

    including, *inter alia,* remaining alert to incipient anxiety, rising anxiety or imminent

    panic attack; initiating interruptive behavior, interpersonal interaction; tactile, deep

    pressure and warmth stimulation; grounding; remaining alert to intruders; and focusing

    on its handler; all in a concerted effort to keep Ms. W. V. calm, focused and able to cope

    with escalating symptoms.

4.  Ms. W. V. has suffered from horrific and debilitating panic disorder resulting in major

    depressive disorder and anxiety disorder stemming from severe and chronic childhood

    trauma, the details of which are not only irrelevant here, because they are acknowledged

    by all, but also humiliating and exacerbating of the underlying conditions when forced to

    relive and disclose, and why she is only identified herein as Ms. W. V.  In fact, because

Defendant(s) are fully aware of Ms. W. V.'s identity as she is their employee for six years, and a student prior to that, such that they have a full history file on her, there is no justifiable reason to require any more public disclosure of identity than is made herein and any such insistence is further evidence of a willful intent to cause harm.

5. Through the years, through significant cost and effort, both monetarily and emotionally, Ms. W. V. has learned to cope with her debilitating conditions and has, to her great credit, succeeded in obtaining a college education (a Bachelors degree from Kean and a Masters degree from Fordham) and since 2006 up and until the acts and omissions complained of herein, and now, has excelled in her job at Kean University.

6. In an effort to reduce her dependency on pharmaceutical preparations, Ms. W. V. read about and investigated the use of PSDs, especially in the context of our soldiers coming back from service and successfully utilizing the services of a PSD to assist with coping with post-traumatic stress disorder. Ms. W. V. and her physician believed such a solution might be of tremendous value for her situation.

7. In fact, Kean and its Center for Nursing Research has recently accepted a grant for a research initiative to study the therapeutic effects of animal assisted therapy on stress indicators in the combat population. (See Exhibit "A" for a story regarding same).

8. In or around late 2009, Ms. W. V. obtained Prince and embarked on the path of training him to be her PSD. Prince thereafter went through public access and individual training and has learned to assist Ms. W. V. to recognize early onset of symptoms of her condition which is instrumental in coping with and avoiding severe attacks.

9. On or about September of 2010, Ms. W. V. did not know the procedure for making a request for accommodation and informally requested of her immediate supervisor, Dr. Stephen Kubow, that she be allowed to be accompanied by Prince to work and he agreed.

10. Ms. W. V. was accompanied at work by Prince for several months, from when Dr. Kubow told her it would be okay in September of 2010 through the end of that year, without incident.

11. In or around early December 2010, Ms. W. V. was informed by Kean that she would need to make a formal request for accommodation to continue being accompanied by Prince to work.

12. On December 13, 2010, Ms. W. V.'s physician, Dr. Bruce Schweiger wrote a letter to Kean supporting Ms. W. V.'s formal request to bring Prince to work stating that Prince is medically necessary.

13. Thereafter, Prince was observed relieving himself on or around the property proximate to the Center for Academic Success by a woman who identified herself as a director of Facilities who made rude unfounded allegations and threatened to make a report with President Farahi's office.  Although cleaned up immediately (as always), Ms. W. V. was thereafter informed by Director of H.R. Chowdhury that Prince would no longer be permitted to accompany Ms. W. V. to work.  Ms. W. V. restated her request for a reasonable accommodation, but Defendant(s) intentionally and affirmatively refused, as a result of a conscious and intentional decision knowingly violative of the law and Ms. W. V. was told not to return to work until she was able to come without Prince.

14. Defendant(s) would not accept Ms. W. V.'s physician's documentation of her disabilities and manner of treatment, all that was legally required, but instead required invasive, embarrassing and humiliating second and third opinions.

15. A Complaint was thereafter filed with the EEOC.

16. In total, just in connection with this matter, Ms. W. V. was examined by three different psychiatrists, all of whom confirmed that she suffers from a covered disability.  One such psychiatrist, an independent psychiatrist chosen by Kean and agreed to by Ms. W. V., Dr. Ciolino, concluded that Ms. W. V. suffers from a disability, and concluded that being accompanied by Prince was necessary and a reasonable accommodation.

17. Notwithstanding the foregoing independent conclusion, Defendant(s) nevertheless put Ms. W. V. through a miserable process which resulted in:

   a.   her being refused access to her job for ten months (four of which were *after* Dr. Ciolino's report);

   b.   Defendant(s) not paying Ms. W. V. for those ten months;

   c.   forcing Ms. W. V. to deplete her sick days, personal and vacation days and personal savings; and

   d.   only after continued efforts and pressure from the undersigned counsel, Kean reluctantly allowed her to return to work, although under a written policy whose sole purpose is to create an unworkable and hostile environment for Ms. W. V. and Prince, which would inevitably lead to Ms. W. V. and Prince making one false move providing Defendant(s) with a pretense for declaring Ms. W. V. and Prince in default of such policy and thereby discharging her from her position.

18. Although Defendant(s) have now allowed Ms. W. V. to work with Prince, Defendant(s) continue to withhold her rightful back pay, benefits, sick, personal and vacation days used unnecessarily, attorney's fees and other costs Ms. W. V. was forced to incur simply to obtain what was lawfully required from the outset.

19. Defendant(s), having added insult to injury, have most recently taken the position that Ms. W. V.'s absence from work was unexcused, and as such, Kean has provided her with a notice dated February 22, 2012 indicating that her anniversary date of employment is altered which affects pay increments and benefits.  When brought to task on this latest, but continuing illegal treatment, Kean has, through counsel, promised to rescind the February 22, 2012 notice.

### JURISDICTION AND VENUE

20. This is an action arising under the Americans with Disabilities Act, 42 U.S.C. §12101 *et. seq.*("ADA") and the United States District Court for the District of New Jersey is authorized to exercise original jurisdiction pursuant to 29 U.S.C. § 794a; and 28 U.S.C. §§ 1331, 1343, 1441, 1446(a) and 1446(b).  Declaratory and injunctive relief are sought under 28 U.S.C. §§ 2201-2202.

21. This is an action also arising under the New Jersey Law Against Discrimination, N.J.S.A. 10:5 – 1, *et. seq.*, ("NJLAD") and this Court is also authorized to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

22. Venue is proper in this district under 28 U.S.C. § 1391, because substantially all of the events giving rise to this cause of action occurred in this district.

### PARTIES

23. Plaintiff Ms. W. V. is a citizen of the State of New Jersey who resides at 806 Morris Turnpike, Short Hills, New Jersey 07078.   Ms. W. V. is a current employee of Kean University and has been employed there since 2006.   Ms. W. V., known to Kean University, suffers from, *inter alia,* major depressive disorder, post traumatic stress disorder and panic disorder, that substantially limit certain major life activities and are disabilities under the ADA, NJLAD as well as Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 705(20)(B).

24. Defendant Kean University is a public university of the State of New Jersey located at 1000 Morris Avenue, Union, New Jersey 07083 with a student population over 15,000 and who employs over 300 full-time faculty plus part-time, adjunct and administrators.   As such, Kean University is covered by Title II of the ADA, 42, U.S.C. § 12131.   Kean University is a recipient of federal financial assistance and thus is covered under Section 504, 29 U.S.C. § 794.

25. Defendant Mr. Dawood Farahi ("Farahi") is President of Kean University and is thus responsible for assuring Kean University's compliance with all laws and regulations.

26. Defendant Mr. Faruque Chowdhury ("Chowdhury") is Director of Human Resources of Kean University and is thus directly responsible for assuring compliance with employment laws and regulations.

27. Unknown at this time Defendant(s) John and Jane Does are those who are agents of or act in active concert with Kean University, Farahi, and/or Chowdhury in their acts and omissions perpetrated against the Plaintiff.

**FACTS COMMON TO ALL COUNTS**

28. Ms. W. V. has been willfully and vindictively discriminated against by Defendant(s) in Kean's initial steadfast refusal to grant Ms. W. V. the ability to be accompanied to work by her reasonably requested medically necessary psychiatric service dog and now although allowing such accommodation, continuing to refuse to make Ms. W. V. whole from the ordeal she has been forced to suffer.  Ms. W. V. made a reasonable request for accommodation that Kean has been unable to show causes undue hardship.  Kean has not been able to offer any other comparable accommodation.  Nevertheless, Kean refused to allow Ms. W. V. to be accompanied to work by her PSD for over ten months causing a constructive discharge.

29. Ms. W. V. filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on May 12, 2011, more than 180 days prior to filing this Complaint.  After investigation and mediation efforts, Mr. Ralph Charles of the EEOC agreed that Ms. W. V.'s request is reasonable and does not cause undue hardship, but, after more than three months after being informed that Kean had informally agreed to a settlement, Ms. W. V. remains without fully being made whole.

30. On December 2, 2011, the undersigned counsel wrote to Mr. Charles of the EEOC (which letter was received on December 5, 2011) formally putting them on notice that more than 180 days had elapsed and requesting the EEOC to comply with law and issue the "Right to Sue" letter.  To date, and although requested repeatedly, the EEOC has not issued a "Right to Sue" and therefore, we attach as Exhibit "B" counsel's letter of December 2, 2011.

31. Ms. W. V. has at all times relevant herein been an exemplary employee of Kean University and at all times relevant herein known to Kean University as an employee with a disability as that term is defined under the ADA.

32. On or around September 2010, Ms. W. V. made known to her direct supervisor a request for accommodation to be accompanied at work by her PSD, a request that should have been recognized at that time as a reasonable request under the ADA.

33. Thereafter, Ms. W. V. was actually accompanied to work by her PSD for several months without incident.  Ms. W. V. works in a closed office and her PSD is a small, friendly, hypo-allergenic,  Havanese, trained service animal and during the months that her PSD was there, caused no trouble to anyone.

34. Ms. W. V.'s personal doctor, Dr. Bruce Schweiger, M.D. of Central Jersey Behavioral Health, LLC with offices at 19 Holly Street, 1st Floor, Cranford, New Jersey 07016, by letter dated December 13, 2010 addressed to Chowdhury stated that Plaintiff's PSD is medically necessary.

35. Thereafter, Ms. W. V. was informed that she needed to make a formal request for reasonable accommodation that would be evaluated and a determination made.

36. Ms. W. V. was made to undergo a psychiatric evaluation by Kean's doctor, Dr. Finkelstein who admitted in a letter misdated February 7, 2077, that Ms. W. V. does suffer from a disability that qualifies under the ADA.  However, although only in one short office visit, wherein Ms. W. V. was accompanied at all times by her PSD, Dr. Finkelstein disagreed with Dr. Schweiger, Ms. W. V.'s personal doctor attending to her on many occasions, that her PSD is medically necessary and specifically said that no accommodation was necessary.  During this evaluation, Dr. Finkelstein feigned ignorance as to what the evaluation was even for, never informing Ms. W. V. why she was there, all in an attempt to set her up and provide legitimacy to Kean's pre-decided outcome that Prince would no longer be permitted on campus.

37. On that basis, and although Ms. W. V. is entitled to rely on her own doctor's recommendation and although some third party doctor analysis does not render her request unreasonable, Kean in utmost bad faith, denied Ms. W. V.'s reasonable request for accommodation and Ms. W. V. was told that she could no longer be accompanied to work by her PSD.

38. Thereafter, Ms. W. V. employed the services of the undersigned counsel to alert Defendant(s) to the relevant laws and attempt to persuade Kean University to reconsider its position and allow the reasonable accommodation of Ms. W. V.'s PSD.

39. On April 22, 2011, the undersigned counsel addressed a letter to Chowdhury (attached as Exhibit "C") advising Kean University of Ms. W. V.'s request of a reasonable accommodation under the ADA and that unless Kean University could demonstrate that Ms. W. V.'s PSD somehow caused Kean University undue hardship, continuing to prevent Ms. W. V. from working would be a violation of the law.

40. On May 5, 2011, Kean's in-house counsel, Michael A. Tripodi, Esq. responded (attached as Exhibit "D") that Kean did not dispute that Ms. W. V. requested an accommodation under the ADA, nor did Kean provide any evidence of undue hardship.  Instead, Kean questioned whether the accommodation requested was reasonable and unilaterally imposed the requirement of another psychiatric evaluation.

41. Ms. W. V., through counsel, responded by letter of May 18, 2011 (attached as Exhibit "E") that Kean's position was in bad faith and that Ms. W. V.'s doctor's opinion as to what is medically necessary is controlling and made her request reasonable.  In that May 18 letter, it was also disclosed to Kean that Ms. W. V.'s primary care physician determined that the prospect of facing yet another psychiatric evaluation was adding to her

stress and as a result of what Defendant(s) were doing, increased her levels of medications.

42. On June 2, 2011, Kean's in-house counsel, Michael A. Tripodi, Esq. responded (attached as Exhibit "F") maintaining insistence that Ms. W. V. be further evaluated and subjected to a humiliating and embarrassing further psychiatric evaluation as a result of "distress shown by Ms. W. V. while at work" although she hadn't been at work since she was told not to arrive with her PSD.

43. After some back and forth, in an effort to expedite matters, and although not required of her under the law, Ms. W. V. agreed to a third party evaluation and offered herself for psychiatric evaluation by Kean University chosen doctor, Dr. Charles P. Ciolino, M.D. with offices at 597 Springfield Avenue, Summit, New Jersey 07901 on August 18, 2011.

44. On September 13, 2011, Dr. Ciolino addressed a letter to Ms. Yrelys Tapanes, Managing Assistant Director, Benefits, Office of Human Resources, Kean University (attached as Exhibit "G") in which he agreed with Ms. W. V.'s physician.

45. Specifically, Dr. Ciolino stated, "I support her request for a PSD as an accommodation, as well as, her return to her job."  Moreover, Dr. Ciolino personally observed Ms. W. V.'s PSD perform tasks.  He stated, "Prince, after sensing her muscle tension, sweating and anxiety, tapped her gently and the patient became calmer and more focused after this."

46. Although dated September 13, 2011, Ms. W. V. nor this office was provided a copy of Dr. Ciolino's letter by Kean.  Instead, on September 27, 2011, Ms. W. V. was forced to retrieve a copy of it directly from Dr. Ciolino, whereupon the letter was provided by the undersigned to Mr. Ralph Charles at the EEOC.

47. On September 28, 2011, Mr. Charles informed Plaintiff that she would be allowed to return to work but that there would be some details to work out.

48. On October 7, 2011, Plaintiff's counsel reached out to Mr. Charles to obtain a status update whereupon Mr. Charles replied, "counsel has asked the doctor for some clarifications and to educate them on the condition."

49. Without hearing further, Plaintiff's counsel contacted Mr. Charles via telephone in early November 2011 and was asked to provide this firm's fees to date on behalf of Ms. W. V. so that final settlement details could be arranged.  The undersigned counsel provided same via email on November 11, 2011.

50. On December 22, 2011, Kean provided a return to work letter dated December 16, 2011 (attached as Exhibit "H"), without addressing Ms. W. V.'s continuing legal fees and costs and which contained several "beyond the law" restrictions.  Apparently, there was a second report from Dr. Ciolino on October 31, 2011, but Plaintiff has never been provided a copy.

51. On December 30, 2011, Plaintiff responded via the undersigned counsel to Mr. Charles of the EEOC (attached as Exhibit "I") noting Plaintiff's many concerns with the imposed restrictions.

52. On January 31, 2012, Plaintiff, her counsel, State Deputy Attorney General Ms. Jennifer Campbell and Mr. Charles met at the offices of the EEOC to attempt to finally resolve the outstanding issues.

53. Despite mounting legal fees made necessary by Kean's inability to act swiftly since it asked for counsel's fees to date in early November of 2011, Kean was only willing to

"offer" less than half of those early fees, or five thousand dollars ($5,000) while fees to

that date were approximately fifteen thousand dollars ($15,000).

54. Despite informally agreeing to consider Kean's offer in the hopes of finally putting all of

the nonsense behind her, Plaintiff still has not seen even a draft of the agreement, a penny

in back wages wrongfully withheld from her, a reinstatement of sick and personal days

wrongfully taken from her, nor a penny towards her costs and fees, which now, as a result

of the necessity of counsel's latest efforts, are mounting.

55. Ms. W. V. has suffered multiple acts of discrimination by Defendant(s), for which she

seeks compensatory damages, and continues to be harmed every day that passes that

Defendant(s) continue in possession of her back wages, benefits, costs and fees and all

legal interest thereon.

56. To date, Kean has never provided one example of undue hardship actually or potentially

suffered as a result of Plaintiff's request for accommodation.

### <u>COUNT I</u>
(Americans with Disabilities Act)

57. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at

length herein.

58. As an employee who is suffering from a protected disability who sought reasonable

accommodations in the workplace, Plaintiff is in a class of individuals who are protected

from disability discrimination.

59. Defendant(s)' acts and omissions were intentional and/or in reckless and deliberate

disregard of the law when Defendant(s):

    a.  insisted on multiple psychiatric evaluations under a pretense of "fitness for duty"

        evaluations and after notice that such were unlawful;

    b.   failed to rectify the aforesaid violations of law after notice;

    c.   undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

    d.   undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

    e.   withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

60. All the foregoing were for the unlawful purpose of:

    a.   forcing Plaintiff to resolve this matter by accepting

        i.   less than full compliance;

        ii.   less than the monetary compensation she was entitled to; and/or

        iii.   subject to unlawful obligations on her part;  and/or

    b.   with the intent of continuing the foregoing acts and omissions in the future.

61. Based upon the acts more fully described herein, Defendant(s) have conspired to intentionally, or unintentionally, failed to follow, and have violated the ADA, 42  U.S.C. § 12101, *et. seq.*

62. As a direct and proximate result of Defendant(s)' acts and omissions, Plaintiff has been damaged and will continue to incur damages.

## <u>COUNT II</u>
(New Jersey Law Against Discrimination – Disabilities)

63. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

64. As an employee who is suffering from a protected disability who sought reasonable accommodations in the workplace, Plaintiff is in a class of individuals who are protected from disability discrimination.

65. Defendant(s)' acts and omissions were intentional and/or in reckless and deliberate disregard of the law when Defendant(s):

  a. insisted on multiple psychiatric evaluations under a pretense of "fitness for duty" evaluations and after notice that such were unlawful;

  b. failed to rectify the aforesaid violations of law after notice;

  c. undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

  d. undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

  e. withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

66. All the foregoing were for the unlawful purpose of:

  a. forcing Plaintiff to resolve this matter by accepting

    i. less than full compliance;

    ii. less than the monetary compensation she was entitled to; and/or

    iii. subject to unlawful obligations on her part;  and/or

  b. with the intent of continuing the foregoing acts and omissions in the future.

67. Based upon the acts more fully described herein, Defendant(s) have conspired to intentionally, or unintentionally, failed to follow, and have violated the NJLAD, N.J.S.A. 10:5-1 *et. seq.*

68. As a direct and proximate result of Defendant(s)' acts and omissions, Plaintiff has been damaged and will continue to incur damages.

## COUNT III
(New Jersey Law Against Discrimination – Constructive Discharge)

69. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

70. As an employee who is suffering from a protected disability who sought reasonable accommodations in the workplace, Plaintiff is in a class of individuals who are protected from disability discrimination.  Defendant(s)' refusal to provide the reasonable accommodations requested by Plaintiff, without providing for any show of undue hardship, Defendant(s) put Plaintiff in circumstances where a reasonable person in her condition would have believed she had no choice but to not work.

71. Defendant(s)' acts and omissions were intentional and/or in reckless and deliberate disregard of the law when Defendant(s):

    a.  insisted on multiple psychiatric evaluations under a pretense of "fitness for duty" evaluations and after notice that such were unlawful;

    b.  failed to rectify the aforesaid violations of law after notice;

    c.  undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

    d.  undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

    e.  withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

72. All the foregoing were for the unlawful purpose of:

     a.   forcing Plaintiff to resolve this matter by accepting

          i.   less than full compliance;

         ii.   less than the monetary compensation she was entitled to; and/or

        iii.   subject to unlawful obligations on her part;  and/or

     b.   with the intent of continuing the foregoing acts and omissions in the future.

73. Based upon the acts more fully described herein, Defendant(s) have conspired to intentionally, or unintentionally, failed to follow, and have violated the NJLAD, N.J.S.A. 10:5-1 *et. seq.*

74. As a direct and proximate result of Defendant(s)' acts and omissions, Plaintiff has been damaged and will continue to incur damages.

**COUNT IV**
(New Jersey Law Against Discrimination – Aiding and Abetting)

75. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

76. Defendant(s)' acts and omissions were intentional and/or in reckless and deliberate disregard of the law when Defendant(s):

     a.   insisted on multiple psychiatric evaluations under a pretense of "fitness for duty" evaluations and after notice that such were unlawful;

     b.   failed to rectify the aforesaid violations of law after notice;

     c.   undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

     d.   undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

e.  withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

77. All the foregoing were for the unlawful purpose of:

a.  forcing Plaintiff to resolve this matter by accepting

i.  less than full compliance;

ii.  less than the monetary compensation she was entitled to; and/or

iii.  subject to unlawful obligations on her part;  and/or

b.  with the intent of continuing the foregoing acts and omissions in the future.

78. Based upon the acts more fully described herein, individual Defendants Farahi and Chowdhury and other as yet to be named agents of Kean, have taken part in, participated in, or otherwise approved of acts of unlawful discrimination against Plaintiff.

79. As a direct and proximate result of such Defendants' acts and omissions, Plaintiff has been damaged and will continue to incur damages.

## **COUNT V**
(New Jersey Law Against Discrimination – Personal Liability)

80. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

81. John and Jane Does' acts and omissions were intentional and/or in reckless and deliberate disregard of the law when they:

a.  insisted on multiple psychiatric evaluations under a pretense of "fitness for duty" evaluations and after notice that such were unlawful;

b.  failed to rectify the aforesaid violations of law after notice;

c.  undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

   d.  undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

   e.  withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

82. All the foregoing were for the unlawful purpose of:

   a.  forcing Plaintiff to resolve this matter by accepting

      i.  less than full compliance;

     ii.  less than the monetary compensation she was entitled to; and/or

    iii.  subject to unlawful obligations on her part;  and/or

   b.  with the intent of continuing the foregoing acts and omissions in the future.

83. Jane and/or John Does, aided, abetted, incited, compelled and/or coerced any of the foregoing proscribed acts and/or omissions, or attempted to do so.

84. Jane and/or John Does, in so doing, knowingly gave substantial assistance or encouragement to such unlawful conduct.

85. Jane and/or John Does are personally liable for their acts and omissions as set forth immediately above.

86. As a direct and proximate result of such Jane and/or John Does' acts and omissions, Plaintiff has been damaged and will continue to incur damages.

**<u>COUNT VI</u>**
(Intentional Infliction of Emotional Distress)

87. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

88. Defendant(s)' acts and omissions were intentional and/or in reckless and deliberate disregard of a high degree of probability that emotional distress would follow when Defendant(s):

    a.  insisted on multiple psychiatric evaluations under a pretense of "fitness for duty" evaluations and after notice that such were unlawful;

    b.  failed to rectify the aforesaid violations of law after notice;

    c.  undertook a pattern of delay, coercion, and unreasonable and unlawful behavior;

    d.  undertook a systematic effort to only incrementally comply with the law by way of a series of partially compliant steps and unreasonably restrictive procedures; and/or

    e.  withholding rightfully due wages and other compensation, including but not limited to adequately compensating plaintiff's counsel.

89. All the foregoing were for the unlawful purpose of:

    a.  forcing Plaintiff to resolve this matter by accepting

        i.  less than full compliance;

        ii.  less than the monetary compensation she was entitled to; and/or

        iii.  subject to unlawful obligations on her part;  and/or

    b.  with the intent of continuing the foregoing acts and omissions in the future.

90. Defendant(s) were on notice that the foregoing acts and omission would be traumatic and that case law cited supported that conclusion.  Moreover, Defendant(s) were on notice that Plaintiff's medications needed to be and were increased.

91. To insist on, *inter alia,* an unnecessary psychiatric evaluation when put on notice that such was supported by case law as harassing and such was already physically causing the

Plaintiff stress is an extreme and outrageous act beyond all bounds of decency and is intolerable in a civilized community.

92. Defendant(s) acts proximately caused Plaintiff's added emotional distress.

93. Plaintiff's added emotional distress was so severe that no reasonable person should be expected to endure it.  In fact, it was so severe as to cause the need for increased psychiatric medications.

94. Defendant(s) are guilty of intentionally causing Plaintiff severe emotional distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant(s), jointly and severally, assessing penalties and sanctions and awarding to Plaintiff and against Defendant(s);

A.  An Order enjoining Defendant(s) from preventing Plaintiff from being present with her PSD on all areas of campus required by law.

B.  An Order enjoining Defendant(s) from treating her absence from work as anything other than fully paid, fully compensable and fully worked time in all respects.

C.  Compensatory, consequential and exemplary damages, including all losses resulting from Defendant(s)' unlawful acts and omissions.

D.  Punitive damages, due to the intentional, bad faith, outrageous, humiliating, offensive and calculated efforts to delay and deny Plaintiff legal entitlements, to force unlawful restrictions and obligations on Plaintiff and causing her emotional distress.

E.  Pre-judgment and post-judgment interest.

F.  Costs and disbursements of suit, including reasonable attorney's fees made necessary since the acts and omissions herein complained of pursuant to, *inter alia,* 42 U.S.C. § 12117 and N.J.S.A. 10:5-1 *et. seq.*

G.  Any and all such other relief deemed by the Court to be equitable and just, as provided

by law.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all fact issues that may be tried in this matter.

The McHattie Law Firm

_/s/ Jack Baldini_

Jack B. Baldini, Esq.
Attorneys for Plaintiff

Dated:  March 14, 2012.